FILED
2005 Feb-24  AM 09:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TYSON L. HEIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-03-S-3324-NE** |
| | ) | |
| **AVOCENT CORPORATION,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This action is before the court on defendants' motion for summary judgment.[1]

Plaintiff claims that Avocent Corporation ("Avocent"), his former employer, subjected him to a sexually-hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*  Plaintiff also asserts supplemental, state-law claims of outrage and intentional infliction of emotional distress against all defendants.[2]

Upon consideration of the motion, briefs,[3] and evidentiary submissions,[4] the court concludes that summary judgment is due to be entered in favor of all defendants on plaintiff's hostile work environment claim, and that plaintiff's supplemental, state

---

[1] Doc. no. 36.

[2] *See* doc. no. 20 (March 15, 2004 amended complaint).

[3] Doc. no. 37 (defendants' brief); doc. no. 43 (plaintiff's brief).

[4] Doc. no. 38 (defendants' evidentiary submission); doc. no. 43 (plaintiff's evidentiary submission).

tort-claims are due to be dismissed without prejudice.

## I. FACTUAL BACKGROUND

Defendant Avocent is in the business of providing corporations and individuals with "data center and server" technology.[5]  The corporation is headquartered in Huntsville, Alabama.[6]  Avocent hired plaintiff, who is male, to work in its Information Technology ("IT") department on March 3, 1997.  Plaintiff began employment as a "Computer Technician," but was promoted to the position of "Systems Administrator" in 1999 or 2000.[7]  Plaintiff's duties as a Systems Administrator were to procure telephone equipment, manage the company's telecommunications system, and review reports of computer malfunctions.[8]  During the period relevant to this lawsuit, John Bloodworth was plaintiff's direct supervisor.[9]  Defendants Mark Hall and Dan Boyer were plaintiff's co-workers.  Both also worked in the IT department.[10]

Plaintiff received an e-mail from defendant Boyer on January 15, 2003, bearing the subject line "FW: Wheel of Fortune."  The e-mail attachment, when opened, displayed a picture of an adult male wearing a T-shirt that read "G_ F_CK Y__RS_LF

---

[5] Doc. no. 38 (defendants' evidentiary submission), Ex. 7 (Policies, Practices and Guidelines) at 7 ("The History of Avocent").

[6] *Id.* at 8.

[7] *Id.*, Ex. 3 (Hein deposition) at 15, 17, 22.

[8] *See id.* at 17-20.

[9] *See id.*, Ex. 4 (Yarbrough affidavit).

[10] *See id.*, Ex. 3 (Hein deposition) at 72.

— WOULD YOU LIKE TO BUY A VOWEL?"[11] Plaintiff was not the only recipient of this e-mail.  Indeed, Boyer sent the message and attachment to nine other male individuals.[12]

Three months later, on April 15, 2003, plaintiff received an e-mail from defendant Hall.  The e-mail attachment, when opened, featured a twenty-nine second movie clip showing a sexual act.[13]  Hall sent this e-mail and attachment to plaintiff and one other male individual.[14]

Plaintiff asserts that Hall and Boyer included him on their personal e-mail distribution lists without obtaining his consent to do so.[15]  At deposition, plaintiff was asked:  "Now, these guys are [your] friends, aren't they?"; to which plaintiff responded, "[n]ot really."[16]

Plaintiff also received nineteen additional e-mails which he deemed to be offensive.  Thirteen were sent by Boyer and three were transmitted by Hall.[17]  Six of

---

[11] Doc. no. 37 (defendants' brief), Statement of Undisputed Facts, ¶¶ 19-21 (citing doc. no. 38 (defendants' evidentiary submission), Ex. 2 (**Hein confidential deposition**) at 18, 27). Defendants have filed plaintiff's confidential depositions under seal.  Plaintiff does not dispute defendants' statement of facts.

[12] *See id.*

[13] *Id.*, ¶ 13 (citing doc. no. 38 (defendants' evidentiary submission), Ex. 6 (Hein confidential deposition) at Ex. 12).

[14] *See id.*

[15] *See* doc. no. 43 (plaintiff's brief), Ex. 1 (Hein deposition) at 76.

[16] *Id.*

[17] *See* doc. no. 37 (defendants' brief), Statement of Undisputed Facts, ¶ 10 (citing doc. no. 38 (defendants' evidentiary submission), Ex. 2 (Hein confidential deposition) at 3-26).

3

these e-mails had attachments containing "some nudity"[18] or "pornographic materials."[19]   Plaintiff was worried that some included "kiddie pornography," although, according to plaintiff, "[i]t's kind of hard to tell when the only thing in the picture is from the waist down."[20]   The parties do not specify when plaintiff received these transmissions.  Plaintiff asked both Hall and Boyer to stop including him on their e-mail distribution lists, but they did not honor his request.[21]

Avocent claims that it implemented an anti-sexual harassment policy which was "well-known to employees [and] vigorously enforced."[22]   The policy stated in part:

> Avocent does not, and will not, tolerate any type of harassment of our employees . . . .  The term "harassment" includes, but is not limited to, slurs, jokes, and other verbal, graphic or physical conduct relating to an individual's . . . sex (including same-sex harassment) . . . . *"Harassment" also includes . . . electronic communications (email) of a sexual nature involving either members of the opposite or the same sex.*
>
> The Company's managers, supervisors, and co-workers are [] covered by this Policy and are prohibited from engaging in any form of harassing conduct.[23]

The policy instructed employees to report any incidents of harassment to supervisors,

---

[18] *Id.*, ¶ 12 (citing doc. no. 38 (defendants' evidentiary submission), Ex. 2 (Hein confidential deposition) at 18, 27; *id.* at Ex. 5 (Hein confidential deposition) at Ex. 11).

[19] *See* doc. no. 43 (plaintiff's brief), Ex. 1 (Hein deposition) at 74.

[20] *Id.* at 81.

[21] *Id.* at 75-76.

[22] Doc. no. 38 (defendants' evidentiary submission), Ex. 4 (Yarbrough affidavit).

[23] *Id.* at Ex. A and page 9 (emphasis supplied).

to the Human Resources Manager, or to "any other member of the management team," and promised that such reports would be "taken seriously and [would] be thoroughly and objectively investigated."[24]

Plaintiff spoke briefly to his supervisor (Bloodworth) after one of the offensive e-mails. "I popped my head in [Bloodworth's] office and said, 'You know, these e-mails aren't supposed to be going around.' And that was pretty much the extent of it."[25] Plaintiff did not lodge another complaint.[26] He did, however, store the offensive e-mails on his computer. Plaintiff wanted to accumulate enough evidence to make a "very, very, very strong case" that he was being subjected to harassment.[27]

Plaintiff was terminated on August 27, 2003.[28] Avocent alleges that he was fired because of poor work performance. Plaintiff disputes this, although he is uncertain why he was fired. Plaintiff had the following exchange with defendant's counsel at his deposition: "Q: Why do you think you were terminated? A: Honestly, I don't know."[29] Nevertheless, plaintiff believes that some Avocent employees may have accessed his computer while he was on vacation during July of 2003. According to plaintiff, "I believe that they logged in, found evidence [of the offensive e-mails]

---

[24] *Id.*

[25] Doc. no. 43 (plaintiff's brief), Ex. 1 (Hein deposition) at 68.

[26] *Id.* at 69.

[27] *Id.*

[28] Doc. no. 38 (defendants' evidentiary submission), Ex. 4 (Yarbrough affidavit).

[29] Doc. no. 43 (plaintiff's brief), Ex. 1 (Hein deposition) at 64.

that I had, and that probably ended up leading close to me getting terminated."[30]
Plaintiff claims that among other employees, his supervisor (Bloodworth) and
defendants Boyer and Hall had access to his computer.[31]

## II. PROCEDURAL HISTORY

Plaintiff filed suit against Avocent on December 16, 2003, asserting claims of
sexual harassment, outrage, intentional infliction of emotional distress, and breach of
contract.[32]  A week later, plaintiff amended his complaint to add Hall and Boyer as
defendants to all claims.[33]  Plaintiff appeared *pro se* in both filings.  Defendants
moved to dismiss plaintiff's original and amended complaints for failure to state a
claim upon which relief could be granted.[34]  The court denied all pending motions to
dismiss on March 8, 2004; and, because plaintiff recently had employed an attorney,
granted plaintiff the opportunity to file a second amended complaint with the
assistance of counsel.[35]  Plaintiff complied on March 15, 2004, adding a claim against
all defendants for alleged gender-based, pay disparities.  Plaintiff brought this claim

---

[30] *Id.* at 66.

[31] *Id.* at 72.

[32] Doc. no. 1.

[33] Doc. no. 3.

[34] *See* Avocent's motion to dismiss plaintiff's original complaint (doc. no. 6); Avocent's
motion to dismiss plaintiff's first amended complaint (doc. no. 13); Hall and Boyer's motion to
dismiss plaintiff's first amended complaint (doc. no. 14).

[35] *See* doc. no. 17.

under both Title VII and the Equal Pay Act of 1963, 29 U.S.C. § 206(d).[36]

Defendants collectively filed a motion to dismiss the second amended complaint for failure to state a claim upon which relief could be granted on March 19, 2004.[37]  The motion was granted in part and denied in part.  Plaintiff's Equal Pay Act claim, Title VII gender-based, wage disparity claim, and his breach of contract claim were dismissed with prejudice.  Plaintiff's sexual harassment claim was dismissed with respect to defendants Hall and Boyer only.  In sum, the following claims survived defendants' motions to dismiss:  plaintiff's claim of hostile work environment with respect to defendant Avocent, and plaintiff's state law claims of outrage and intentional infliction of emotional distress against all defendants.

Defendants moved for summary judgment on the remaining claims on September 30, 2004.[38]  Plaintiff opposed the motion on October 7, 2004,[39] and filed his brief and evidentiary submission on October 15, 2004.[40]

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in part, that summary judgment not only is proper, but that it "*shall be* rendered *forthwith* if the pleadings, depositions,

---

[36] Doc. no. 20.

[37] Doc. no. 21.

[38] Doc. no. 36.

[39] Doc. no. 41.

[40] Doc. no. 43.

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (emphasis supplied).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and
> make all reasonable inferences in favor of the party opposing summary
> judgment.
>
> The mere existence of some factual dispute will not defeat
> summary judgment unless that factual dispute is material to an issue
> affecting the outcome of the case. The relevant rules of substantive law
> dictate the materiality of a disputed fact. A genuine issue of material fact
> does not exist unless there is sufficient evidence favoring the nonmoving
> party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v.*

*Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*). The

motion pierces the pleadings, and "strikes at the heart of the claim. In effect it argues

that as a matter of law upon admitted or established facts the moving party is entitled

to prevail." Charles Alan Wright, *The Law of Federal Courts* § 99, at 705 (5th ed.

8

1994).

# IV. DISCUSSION

## A.    Abandoned Claim

Plaintiff abandoned his hostile work environment claim at the summary judgment stage.  He offered no response to defendant's well-supported argument that summary judgment should be granted on that claim.  Issues and contentions not raised in a party's brief are deemed abandoned.  *See, e.g.*, *Chapman v. AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) (*en banc*) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him."  *Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986).  There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir.

> 1990).  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned . . . .

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (some citations omitted).[41]

Even so, the court has considered the merits of plaintiff's claim, and finds that the harassment complained of is neither severe nor pervasive.  Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e–2(a)(1).  While this statutory language does not mention, let alone define, "hostile work environment," the Supreme Court held in *Meritor Savings Bank, FSB v. Vinson* that "unwelcome *sexual* advances that create an offensive or hostile working environment violate Title VII."  477 U.S. 57, 64 (1986) (emphasis supplied).

A plaintiff desiring to establish a hostile work environment claim must show

---

[41] *Cf., e.g., Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 n.1 (11th Cir. 2001) ("Lucas has abandoned his unlawful harassment claim by not raising it in his initial brief on appeal.") (citing *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1317 n.17 (11th Cir. 1999) ("Issues that are not clearly outlined in an appellant's initial brief are deemed abandoned.") (citations omitted); *Hartsfield v. Lemacks*, 50 F.3d 950, 953 (11th Cir. 1995) ("We note that issues that are clearly not designated in the initial brief ordinarily are considered abandoned.") (quotation marks and citation omitted); *Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.") (citing *Allstate Insurance Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994)); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to address issue for failure of party to argue it in its brief on appeal).

that:  (1) he belongs to a protected group; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based upon the plaintiff's sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer responsible under a theory of either vicarious or direct liability. *See, e.g., Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*). *See also, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir. 2003); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 508 (11th Cir. 2000); *Gupta v. Florida Board of Regents*, 212 F.3d 571, 582 (11th Cir. 2000); *Cross v. State of Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995); *Bell v. Crackin Good Bakers, Inc.*, 777 F.2d 1497, 1502-03 (11th Cir. 1985); *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982).

The fourth element of a hostile work environment claim is the one that "tests the mettle of most sexual harassment claims." *Gupta*, 212 F.3d at 583.  The Supreme Court has repeatedly emphasized that "sexual harassment is actionable under Title VII *only if* it is 'so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment."'" *Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001) (*per curiam*) (emphasis supplied)

(quoting *Faragher*, 524 U.S. at 786 (in turn quoting *Meritor*, 477 U.S. at 67)).[42]

The fourth element contains both an objective and a subjective component. To be actionable under Title VII, the behavior complained of must result in a work environment "that a reasonable person would find hostile or abusive," as well as an environment that the victim "subjectively perceive[s] . . . to be abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993); *see also, e.g., Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (same); *Johnson*, 234 F.3d at 509 ("Harassment is severe or pervasive for Title VII purposes *only if* it is *both* subjectively *and* objectively severe [or] pervasive.") (citing *Mendoza*, 195 F.3d at 1246) (emphasis supplied).

Here, the court will assume that plaintiff subjectively perceived the harassment complained of to be hostile and abusive. The pivotal question, therefore, is whether

---

[42]As the Supreme Court explained in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998),

> [t]he prohibition of harassment on the basis of sex . . . forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview." . . . We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace — such as male-on-male horseplay or intersexual flirtation — for discriminatory "conditions of employment."

*Id.* at 81 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (holding that a Title VII hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment")).

a reasonable person would have perceived it to be so.  When evaluating the objective severity of the conduct complained of, courts consider, among other factors, the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance.  *See, e.g.* *Miller*, 277 F.3d at 1276 (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (in turn citing *Harris*, 510 U.S. at 23[43]); *Mendoza*, 195 F.3d at 1246; *Gupta*, 212 F.3d at 584.  Furthermore,

> In same-sex (as in all) harassment cases, that inquiry [into the objective severity of harassment] requires careful consideration of the social context in which particular behavior occurs and is experienced by its target.  A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field — even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office.  The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple

---

[43] Speaking for a unanimous court in *Harris v. Forklift Systems*, Justice O'Connor said the issue of

> whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive.  But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82 (1998).

Here, there is no evidence that the e-mails transmitted to plaintiff interfered with his job performance. These e-mails also were not physically threatening or humiliating. The individual defendants did not direct, in person, any sexual conduct toward plaintiff. Plaintiff also knew that the e-mails did not target him in particular. He received them along with other individuals included in defendants' e-mail distribution lists. Plaintiff himself perceived the e-mails to be "quite offensive," but nothing more.

Another factor that the court must consider is how frequently plaintiff's co-workers engaged in the objectionable conduct. The parties have filed, under seal, copies of the e-mails received by plaintiff. Defendants state that plaintiff received twenty-one e-mails, but do not specify the dates of receipt. Plaintiff also fails to specify these dates. Even so, the court may assume that plaintiff received all e-mails between March 3, 1997 (when plaintiff began working for Avocent) and August 27, 2003 (the date of plaintiff's termination), a period of approximately six years and six months. Twenty-one incidents during this span is far too infrequent to substantiate

14

a hostile work environment.  *See Mendoza v. Borden*, 195 F.3d 1238, 1249 (11th Cir. 1999) (holding that five sexually-oriented incidents over an eleventh month period "were far too infrequent to alter the conditions under which [plaintiff] was required to perform her job").

Finally, the court doubts whether the harassment complained of may be deemed severe.  "Although the legal standards for evaluating same-sex and opposite-sex harassment cases are the same, the Supreme Court recognized in *Oncale* that courts may consider the 'genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex' when determining whether a working environment was objectively harassing."  *Ashmore v. J.P. Thayer Company, Inc.*, 303 F. Supp. 2d 1359, 1368 (M.D. Ga. 2004) (quoting *Oncale*, 523 U.S. at 81).  Certainly, if Hall and Boyer had transmitted pornographic e-mails to their *female* colleagues, the court would be far more inclined to find that their conduct was severe.  Hall and Boyer transmitted the e-mails to their male cohorts, however, in an apparent attempt at "locker room humor."  While that "humor" was crude, juvenile, and ill-advised, the court doubts whether defendants' actions were so objectionable as to rise to the level of being "severe."  *Cf. Mendoza*, 195 F.3d at 1247-49 (the following conduct was *not* sufficiently "severe" as to be actionable under Title VII:  (1) one instance in which plaintiff's male supervisor said

15

to her, "I'm getting fired up"; (2) one occasion on which he rubbed his hip against her hip, while touching her shoulder and smiling; (3) two instances in which he made a "sniffing" sound while looking at her crotch; and (4) his "constant" acts of following and staring at plaintiff "in a very obvious fashion").  Of course, the court's analysis would be far different if there were stronger evidence suggesting that Hall and Boyer's conduct amounted to abusive (rather than merely sophomoric) behavior.  There is no such evidence in this case.

In sum, plaintiff was subjected to conduct which was not frequent, was not physically threatening or humiliating, did not interfere with his job performance, and which was not severe.  The court concludes, therefore, that plaintiff's claim of hostile work environment is due to be dismissed on two separate grounds.  First, as previously discussed, plaintiff abandoned his claim at the summary judgment stage.  Furthermore, even reaching the merits, plaintiff fails to establish that the harassment complained of was so severe or pervasive as to establish a hostile work environment.

**B.     Plaintiff's State Law Claims**

Plaintiff alleges separate claims for outrage and intentional infliction of emotional distress.  Under Alabama law, the tort of outrage and the tort of intentional infliction of emotional distress essentially are the same cause of action.  *See, e.g., Sphere Drake Ins., P.L.C. v. Shoney's, Inc.,* 923 F. Supp. 1481, 1491 (M.D. Ala. 1996)

16

(stating that, under Alabama law, the tort of outrage and the intentional infliction of emotional distress are "the same cause of action"); *Ex Parte Lumbermen's Underwriting Alliance,* 662 So. 2d 1133, 1134 (Ala. 1995) (recognizing that intentional infliction of emotional distress is "otherwise known as the tort of outrage"); *Sanders v. Shoe Show, Inc.,* 778 So. 2d 820, 823 (Ala. Civ. App. 2000) (same).

In cases where the court's jurisdiction is based solely upon a federal question, the district court has discretion to entertain state claims that are supplemental to the federal claim.  *See* 28 U.S.C. § 1367(a).[44]  The district court may decline to exercise supplemental jurisdiction, however, when

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     *the district court has dismissed all claims over which it has original jurisdiction*, or

(4)     in exceptional circumstances, there are other compelling reasons

---

[44] 28 U.S.C. § 1367(a) provides that:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

17

for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied).  The Supreme Court added a gloss to this

statutory language in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988),

when observing that

> a federal court should consider and weigh in each case, and at every
> stage of the litigation, the values of judicial economy, convenience,
> fairness, and comity in order to decide whether to exercise jurisdiction
> over a case brought in that court involving pendant [now
> "supplemental"] state-law claims.  When the balance of these factors
> indicates that a case properly belongs in state court, as when the
> federal-law claims have dropped out of the lawsuit in its early stages and
> only state-law claims remain, the federal court should decline the
> exercise of jurisdiction by dismissing the case without prejudice.

*Id*. at 349-50 (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27

(1966)).  Indeed, "in the usual case in which all federal-law claims are eliminated

before trial, the balance of factors to be considered under the pendent jurisdiction

doctrine — judicial economy, convenience, fairness, and comity — will point toward

declining to exercise jurisdiction over the remaining state-law claims."

*Carnegie-Mellon*, 484 U.S. at 350 n.7; *see also L.A. Draper & Son V. Wheelabrator-*

*Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (stating that, "if the federal claims are

dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state

claims").

Here, plaintiffs' federal claims have been eliminated before trial.  A review of

18

plaintiff's state law claims should be conducted by a court of the state of Alabama. This court therefore exercises its discretion to dismiss plaintiff's state law claims without prejudice.

## V.  CONCLUSION

Defendants' motion for summary judgment on plaintiff's claim of hostile work environment is due to be granted.   Plaintiff's state law claims of outrage and intentional infliction of emotional distress are due to be dismissed without prejudice. An appropriate order will be entered contemporaneously herewith.

DONE this 24th day of February, 2005.

_____
United States District Judge